UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THIRTY AND 141, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV1781 SNLJ |
| | ) | |
| LOWE'S HOME CENTERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before the Court after a three-day bench trial, held March 17-19, 2010,

which followed a remand from the Court of Appeals, *Thirty and 141, L.P. v. Lowe's Home*

*Centers, Inc.,* 565 F.3d 443 (8th Cir. 2009). Plaintiffs Thirty and 141 and its related entities

(Thirty) seek reformation of certain declaration of use restrictions on commercial property in St.

Louis County, known as Gravois Bluffs.[1] The following is a statement of the case taken from the

Court of Appeals opinion the factual portions of which are uncontested except as otherwise

indicated:

> On June 10, 1999, Lowe's and Thirty executed a lease agreement for Lowe's to
> occupy a portion of Thirty's property in an area known as Gravois Bluffs in Saint Louis
> County, Missouri. Thirty divided its Gravois Bluffs property into three planned
> shopping areas, which it called the North, South and East shopping centers.[1] Lowe's
> leased a portion of the North shopping center that it intended to use as a home
> improvement store.

---

[1] Plaintiffs J.C. Penney Properties, Inc. and McIntosh Properties, LLC also own portions of the property
subject to the declaration of restriction sought to be reformed and were added as necessary parties by the Court in
response to a motion filed by Lowe's. They have disclaimed any interest in the outcome of this litigation and have
agreed to be bound by the results of the litigation, and therefore did not participate at trial.

The lease restricted Thirty from leasing certain portions of its remaining Gravois Bluffs property for use as a home improvement store. The lease required Thirty to record deed restrictions on the restricted property, stating that

> [Thirty] further agrees to immediately record a deed restriction on *each of the other proposed shopping centers* abutting Highway 141 setting forth a "no home improvement store" restriction all as more specifically set forth on Exhibit E-2.

(emphasis added).

However, the lease did not identify or define "the other proposed shopping centers." Although all three proposed shopping centers abutted Highway 141, Exhibit E-2, which was titled "Legal Description of and Use Restrictions for the Proposed Shopping Centers Abutting Highway 141," only identified and described the South shopping center. Under the heading "Lease Area Shopping Center 'South'," Exhibit E-2 included a metes and bounds description of the South shopping center. The lease contained no description of the North or East shopping centers.

On August 24, 2000, Thirty recorded Declaration 90, the "no home improvement store" deed restriction drafted by Lowe's that is the subject of this appeal. Declaration 90 restricted the South shopping center and portions of Thirty's property known as Lot 7 and Lot 8.[2] At the time the parties executed the lease, Lots 7 and 8 had not been identified or "platted." However, by the time Declaration 90 was prepared and recorded, Lots 7 and 8 had been platted, with Lot 7 abutting the South shopping center and Lot 8 abutting the North shopping center, but neither lot abutting Highway 141.

Thirty asserted that the parties made a mutual mistake by restricting Lots 7 and 8 in Declaration 90 and filed a petition for reformation in the Circuit Court of Saint Louis County, Missouri, which Lowe's removed to federal court pursuant to 28 U.S.C. § 1332. Lowe's contended that it made no mistake in drafting Declaration 90. Both parties filed motions for summary judgment. The district court granted summary judgment to Lowe's, holding that the parties did not intend to exclude Lots 7 and 8 from the restricted property in the lease and, therefore, Declaration 90 contained no mutual mistake.

Fn 1. The parties present conflicting evidence about whether Thirty used the terms North, South and East to describe the proposed shopping centers during the negotiation and drafting of the lease.

Fn 2. Thirty also recorded Declaration 89, which restricts the North shopping center, and Declaration 1291, which restricts the East shopping center. Neither party challenges either Declaration 89 or Declaration 1291.

*Thirty and 141*, 565 F.3d at 444-45.

On appeal, the Eighth Circuit reversed and remanded after determining that 1) "there are genuine issues of material fact such that a reasonable finder of fact could find by clear and convincing evidence that the lease was a preexisting agreement between the parties describing the property to be restricted and the parties did not intend to include Lots 7 and 8 in the restricted

property under the lease," *Id.* at 448; and 2) that "a reasonable fact finder, after making

credibility determinations and weighing the evidence, could find by clear and convincing

evidence that the lease was a preexisting agreement describing the property that the parties

intended to restrict and that the parties made a mutual mistake by including Lots 7 and 8 in

Declaration 90." *Id.* at 449.

In reaching this determination, the Eighth Circuit first concluded that the lease is

ambiguous about whether the parties intended to include Lots 7 and 8 in the restricted property,

because despite the fact that, "Exhibit E-2 identifies and describes only the South shopping

center and does not describe Lots 7 or 8, . . . Exhibit E-2's use of the plural 'proposed shopping

center' and its reference to the East shopping center, along with the lease's general references to

'each of the other proposed shopping centers abutting Highway 141,' are inconsistent with the

proposition that the lease restricts only the South shopping center." *Id.* at 447.

Upon finding this ambiguity, the Court examined parol evidence presented by both

parties, which is permitted "only if the contract's terms are susceptible to more than one meaning

such that reasonable persons may honestly and fairly differ in the construction of its terms." *Id.*

(citing *Muilenburg, Inc. v. Cherokee Rose Design & Build, L.L.C.*, 250 S.W.3d 848, 854

(Mo.Ct.App.2008)). On the record at hand, the Court observed:

> Thirty presented evidence that the parties never intended to restrict Lots 7 and 8.
> First, Thirty offered deposition testimony from a surveyor that Exhibit E-2, which
> includes a metes and bounds description of the South shopping center, did not include
> Lots 7 and 8 as they were later platted. Moreover, Thirty's surveyor testified in his
> deposition that Exhibit E-2 states that the South shopping center is 61.81 acres in total,
> while Lots 7 and 8 alone encompass 68 acres. Thirty also points to the deposition
> testimony of one of the attorneys for Lowe's who stated that Lots 7 and 8 "probably"
> could not be considered to abut Highway 141. Further, one of Thirty's lawyers who was
> involved in the negotiation of the lease explained in his deposition that Thirty had no
> plans to develop Lots 7 and 8 for retail use at the time of the execution of the lease, and,
> therefore, Lots 7 and 8 would not have been included as restricted property in the lease.
> Finally, one of Thirty's lawyers stated that the parties never discussed Lots 7 and 8

during the drafting of the lease, which is again not surprising because the lots had not yet been platted.

Lowe's contends that the lease only conceptually described the property to be restricted and that the parties understood that the restricted property would be specified later because the property had not been platted at the time the lease was executed. Lowe's notes that Thirty ultimately filed deed restrictions on the North and East shopping centers, even though Exhibit E-2 only describes the South shopping center. Therefore, Lowe's argues that Thirty did not believe that Exhibit E-2 described all of the property the parties intended to restrict, which supports Lowe's' argument that the lease's use of the plural "proposed shopping centers" and failure to define "proposed shopping centers" means that the lease restricted more than just the South shopping center. Moreover, one of the attorneys for Lowe's involved in the drafting of the lease testified that the parties intended to restrict all of the property owned by Thirty pursuant to Lowe's' usual policy; however, he was uncertain why Lowe's did not include broad language in the lease to restrict all property owned or later acquired by Thirty in the relevant area.

*Thirty and 141*, 565 F.3d at 448. These, then, are the conflicting accounts that gave rise to the Court's holding that genuine issues of material fact still exist.

To obtain the equitable remedy of reformation, the Court held that Thirty "must show (1) a preexisting agreement of the parties to describe the property as requested, (2) a mistake, and (3) the mutuality of the mistake." *Thirty and 141, L.P. v. Lowe's Home Centers, Inc.*, 565 F.3d 443, 446 (8th Cir. 2009)(citing *Brinkerhoff Land & Livestock Co. v. Doyle*, 778 S.W.2d 336, 338 (Mo. Ct. App. 1989)). More specifically, the Court held that Thirty bears the burden of proving by "clear and convincing evidence that the lease was a preexisting agreement between the parties describing the property to be restricted and that the parties did not intend to include Lots 7 and 8 in the restricted property under the lease." *Id.* at 448.

Thirty must then prove "by clear and convincing evidence that the parties made a mutual mistake in Declaration 90 by restricting Lots 7 and 8." *Id.* The Court explained that "[a] mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain." *Id.* (quoting *Alea London Ltd. v. Bono-Soltysiak Enters.*, 186 S.W.3d 403, 415 (Mo. Ct. App. 2006)). The Court added that "[a]

- 4 -

mutual mistake may exist even when one party claims there was no mistake if the disputed

document contradicts a preexisting agreement. *Id.* at 448-49 (citing *King v. Factory Direct, Inc.*,

639 S.W.2d 627, 636 (Mo. Ct. App. 1982)). Finally, the Court noted that "[w]hether parties are

laboring under a mutual mistake is normally a question of fact." *Id.* (citing *Alea*, 186 S.W.3d at

415).

Applying these concepts to the case at hand, the Court concluded that "evidence that

Declaration 90 conflicts with the lease—the preexisting agreement between the parties—is

evidence from which a reasonable fact finder could find by clear and convincing evidence that

the parties made a mutual mistake in the execution of Declaration 90." *Id.* at 449. Thus, if the

terms of Declaration 90 conflict with the preexisting language of the lease, a mutual mistake can

be inferred. The Court also made clear that "[n]either party argues that the lease itself contains a

mutual mistake," and that "[the] focus is solely on whether Declaration 90 contains a mutual

mistake." *Id.* at 448 n.6.

As a preliminary matter, this Court takes up again the hotly contested issue of the

admissibility of evidence of the parties' intent as to what property was to be restricted.

Defendant offered evidence at trial that plaintiffs communicated with third parties about future

shopping centers and retail uses on Lots 7 and 8. Plaintiffs argue that evidence of this sort should

be limited to objective manifestations of intent by direct communications between the parties.

To be sure, "[i]n Missouri, the court must look to the objective manifestations of the parties to

determine whether a "meeting of the minds" occurred. A person's subjective intent is

irrelevant." *McDaniel v. Park Place Care Center, Inc.*, 918 S.W.2d 820, 827 (Mo.App. W.D.

1996)(citing *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 675

(Mo.App. 1988)).

The real focus of the parties' dispute, however, is whether Thirty's alleged objective manifestation of intent regarding future development of Lots 7 and 8 were admissible only if they were communicated by Thirty to Lowe's, or whether such objective manifestations were admissible even if they were made to persons or parties other than Lowe's. The parties cite no authority directly on point, and this Court has found none. Nonetheless, resolution of the issue is not critical to a resolution of the case because, as will be shown in this Court's findings of fact, Thirty's long term plans, if any, for the development of Lots 7 and 8 are largely irrelevant.

## FINDINGS OF FACT

The following is the joint stipulation of facts provided by the parties:

> Thirty and 141, L.P. ("Thirty") is a limited partnership duly organized and existing under the laws of the State of Missouri with its principal place of business located in the State of Missouri at all times relevant hereto. Gravois Bluffs A, L.L.C. ("GBA") is a limited liability company duly organized and existing under the laws of the State of Missouri with its principal place of business located in the State of Missouri at all times relevant hereto. Gravois Bluffs I, L.L.C. ("GBI") is a limited liability company duly organized and existing under the laws of the State of Missouri with its principal place of business located in the State of Missouri at all times relevant hereto.

> Lowe's is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business located in the State of North Carolina at all times relevant hereto. Thirty, GBA, and GBI are affiliated with G.J. Grewe, Inc. ("G.J. Grewe"). G.J. Grewe manages the property known as Gravois Bluffs. GBI holds the lease and title to the real property on which the Lowe's store at issue in this case sits. Both the Lease and that real property were assigned to it from Thirty.

> In 1997, Thirty's predecessor began to assemble the land now known as Gravois Bluffs. In May 1997, G.J. Grewe contacted Charles Smithey ("Smithey") at Lowe's to inquire whether Lowe's would be interested in Gravois Bluffs. In the letter, G.J. Grewe informed Smithey that G.J. Grewe was acquiring 250 acres for a development. On October 21, 1998, counsel for Lowe's, Jacob Reby ("Reby") provided Gary Grewe ("Grewe"), of G.J. Grewe, and G.J. Grewe's counsel, Kevin Cushing ("Cushing"), a draft of a proposed form of a lease for a Lowe's at Gravois Bluffs. On June 10, 1999, Thirty and Lowe's entered into a Lease.

The Lease provides that Thirty will "immediately record a deed restriction on each of the other proposed shopping centers abutting Highway 141 setting forth a 'no home improvement store' restriction all as more specifically set forth on Exhibit E-2." Exhibit E-2 is entitled "Legal Description of and Use Restriction for the Proposed Shopping Centers Abutting Highway 141." Attached to Exhibit E-2 is a metes and bounds legal description. The legal description attached to Exhibit E-2 to the Lease provides a true and accurate legal description for what is now platted as Lot 6 on the west side of Highway 141, which is 61.81 acres. The legal description attached to Exhibit E-2 to the Lease does not include any of the Gravois Bluffs property on the east side of Highway 141. Declaration 1,291 restricts Lots 1, 2, 3, 4, 5, 6, 7, 8 and 9 of Gravois Bluffs Plat Five, which is located on the east side of the Gravois Bluffs property.

On August 24, 2000, the Declaration of Restrictions at issue in this case ("Declaration 90") was recorded. The legal description in Declaration 90 includes Lots 6 (as subdivided), 7 and 8 of Gravois Bluffs Plat Three. Home Depot is a competitor of Lowe's.[2]

Following the three-day bench trial, this Court makes these additional findings of fact based on clear and convincing evidence:

1. From October, 1998, when counsel for Lowe's first presented Thirty a draft of a proposed lease agreement through the signing of the final lease on June 10, 1999, the parties had extensive discussions and negotiations on a host of issues including the geographic scope of the use restrictions on the shopping center development. During this time, the parties exchanged several drafts of the lease, all of which were prepared by counsel for Lowe's.

2. During the negotiations, the use restrictions pertaining to Lots 5, 6, 7 & 8 were never discussed because none of the lots had been platted at the time the lease was signed. Instead, the parties referred to the "proposed shopping centers abutting Highway 141." At the outset of the negotiations, or soon thereafter, Lowe's was made aware that Thirty planned three shopping centers abutting Highway 141, two on the west side of Highway 141 and the other on the east

_____

[2]As a practical matter, this litigation arose because of Thirty's interest in leasing a portion of Lot 7 to Home Depot.

side. These were the only proposed shopping centers that were the subject of the parties' negotiations. By the time the lease was signed (but perhaps not before), both parties referred to the centers on the west side as the north and south shopping centers, and the center on the east side as the east shopping center. The Lowe's store was to be located on the north shopping center, also called the Lowe's shopping center. As the negotiations proceeded, the parties prepared site plans and grading plans to locate and illustrate the shopping centers on the property to be developed. After the lease was signed, the platting of the entire development area was completed; the north shopping center was reconstituted as Lot 5, the south center as Lot 6, and the remaining property adjacent to the shopping centers as Lots 7 and 8. See Defendant's Exhibit F attached hereto.

3. The use restriction set out in the initial draft of the lease submitted to Thirty on October 21, 1998, pertained only to the Lowe's, or north, shopping center, but on April 8, 1999, counsel for Lowe's submitted a revised draft that added the following language to Paragraph 5: "Landlord agrees to immediately record a deed restriction on the proposed shopping centers abutting Highway 141." Thereafter, on April 20, 1999, in response to the April 8 proposal, counsel for Thirty wrote to counsel for Lowe's that, "Landlord has agreed to grant an exclusive to the tenant so that no other home improvement store or big box hardware store in excess of 30,000 square feet will be located in the Shopping Center or the retail portion of the landlord's development on the west side of Highway 141." At no time during the lease negotiations and through the filing of Declaration 90 did either party communicate to the other that any of part of Thirty's development on the west side of Highway 141 would be or may be developed for retail purposes except for what eventually became the north and south shopping centers and a large movie theater on Lot 8 across from the north shopping center. There was simply no discussion

among the parties about further retail development. Even if Lowe's was under the impression based on some objective manifestation from Thirty that additional property on the west side of Highway 141 would at some point be developed for retail purposes, that information was irrelevant given the fact findings that follow.

4. By letter of June 7, 1999, only three days before the signing of the final lease, the parties agreed to last-minute adjustments to the scope of the use restrictions as set out in Exhibit E-2, entitled, "Legal Description of and Use Restrictions for the Proposed Shopping Centers Abutting Highway 141." As the Court of Appeals determined, however, Exhibit E-2 is ambiguous because the title to the exhibit refers to shopping centers in the plural, but the exhibit contains the legal description for only one shopping center, which is the south shopping center. Reference to the proposed shopping centers in the plural, the Court explained, and the absence of a definition of the term "proposed shopping centers," left open the possibility that the parties intended that Lots 7 and 8 be included in the restricted property. That possibility, however, is no longer tenable and the ambiguity is easily resolved. As noted, the parties contemplated that there were only three proposed shopping centers abutting Highway 141, the north, south and east centers. Thus, the term "proposed shopping centers" as used in the lease refers solely to the north, south and east centers. Furthermore, there was no need to specifically describe the north shopping center because the detailed site plan for that area was already attached to the lease as Lease Exhibit A. In addition there was no description of the east shopping center that could be included because Thirty had not yet acquired all the property for that center, and the parties had orally agreed that the description for that tract would be determined later. That is why Exhibit E-2 included only the legal description for the south shopping center, even though the exhibit referred to shopping centers in the plural.

5. In any event, the very purpose for inserting the legal description to the south shopping center was necessarily to limit the use restrictions to that area, so that the restrictions would not be extended outside of that area, and extended, in particular, to what became Lots 7 and 8. There is no other rational explanation for delineating the property to be covered by the restrictions. Nor is there any question that Lowe's agreed to this last minute restriction. Nor does Lowe's make any claim that inclusion of this provision was itself a mutual mistake.

6. Thus, because the property that comprises Lots 7 and 8 is outside the boundaries of the three shopping centers, and because none of it abuts Highway 141, this Court concludes that the parties did not intend for the property to be included in the use restrictions.

7. The lease agreement signed June 10, 1999 constitutes, in pertinent part, a preexisting agreement of the parties describing the property that is subject to use restrictions.

8. Thirty has established by clear, cogent and convincing evidence that a mistake was made in the execution of that part of the lease pertaining to the implementation of the use restrictions in that the property described in Declaration 90 did not conform to the property described in the lease itself.

9. The mistake was mutual in that both parties have done what neither party intended from the language of the lease.

## CONCLUSIONS OF LAW

In view of the finding that the parties made a mutual mistake in describing the property to be restricted under Declaration 90 pursuant to the terms of the lease agreement, the equitable remedy of reformation is warranted. Accordingly, the use restrictions set out in Declaration 90 shall be conformed to the language of the lease so that all references to the application of the use restrictions to Lots 7 and 8 shall be void and unenforceable.

**SO ORDERED** this 27th day of August, 2010.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE



# GRAVOIS BLUFFS PLAT TWO

A RESUBDIVISION OF TRACT A, TRACT B, AND TRACT C OF GRAVOIS BLUFFS AS RECORDED IN PLAT BOOK _____ PAGE _____ OF THE ST. LOUIS COUNTY, MISSOURI RECORDS, AND BEING PART OF U.S. SURVEYS 973,1987,3011 AND PART OF FRACTIONAL SECTION 34, TOWNSHIP 43 AND 44 NORTH, RANGE 6 EAST, ST. LOUIS COUNTY, MISSOURI

HIGHWAY 141

Defendants' Exhibit F

771